Good morning, counsel, both sides. All right, we have one case today that the panel received for an expedited determination number 23-30036, United States v. Berry. Ms. Rhodes, you're ready to proceed. Yes, Your Honor. May it please the court. Good morning. My name is Celia Rhodes with the Federal Public Defender's Office, and I represent Mr. Berry. For well over a year now, the government has been holding Mr. Berry in its custody under the Insanity Defense Reform Act, ostensibly for the purpose of assessing his competency and ultimately bringing him to trial. IDRA is the detailed and comprehensive statutory scheme that governs every step of the federal competency process. And through Section 4241D in particular, Congress imposed a strict four-month limit on how long an incompetent defendant can be committed to the custody of the Attorney General for the government to assess whether he can be restored to competency. Once that four-month period- Ms. Rhodes, I'll have the same question for the government, unless I forget it. Since this order was limited in time, is it accurate to say that your client is still being held pursuant to that order? It seems to me he may be held pursuant to no order. I think that it's a good point that he's being held pursuant to no order, because I think that this is unlawful, and the Attorney General lost its authority to hold him a long time ago. But I will say- I know you like that characterization, and I thought you might match on to it, but it seems to me, in the case law you cite, and your friend on the other screen cites, I don't see anything that quite addresses this. What happens at the end of one of these orders, whether it's the initial one, whether it's you do have something that's supposed to happen at the end of those orders, is there any case law or anything in the statute that perhaps has not been pointed out yet that says where we are in so far as the court's power or court's authority under the statute is concerned? Sure. So, Your Honor, this order is the only thing effectuating the government's ability to hold Mr. Berry in its custody, in Attorney General custody in particular. And we know the government believes that, because in their filings in North Carolina, that's what they say. They say he's being held in Attorney General custody pursuant to that order. But first, I would say that the statute, the text itself, indicates that the Attorney General loses authority to commit the individual beyond that point once it expires. But also this court in Caesar, which discussed why that custody is constitutional, made note that if the defendant has not improved by the end of the commitment period or the government cannot show he can be restored, he must be discharged from Attorney General custody and cannot be subject to any additional commitment under 4241. I don't think there's any question that he is currently being subject to commitment under 4241, because he was committed to the Attorney General's custody. If he was no longer committed pursuant to that, he would have been returned to U.S. Marshals custody a long time ago. So I agree that the government is unlawfully detaining him pursuant to this order. It's authority to hold them. I agree that they're unlawfully, which is why we want this order vacated and his order has returned to the U.S. Marshals, because this is the only basis for the government to continue holding Mr. Berry in Attorney General custody at FNC Buttner. There is no other basis for them to be holding him there. Ms. Rhodes, what do you do with the government's argument that the notice of appeal is only as to the second order? When you look at the Evans case, I forget what circuit that is, you had the initial order being challenged, and that's what the circuit said, made the collateral effects because you had the competency or the need for this competency determination set out in that order, the continuing effects of that, et cetera. Change shifts the burden of proof when you're trying to get out from under that order. You didn't appeal from initial order, you appealed only from the second order, which doesn't change the earlier or even address the earlier fact findings and just says another 120 days. You say it's not supported by sufficient evidence or else. But that's a different question, seems to me, than the collateral effects that arise from the initial order. Can you help me with that? Sure. So I think actually the effects of this order are even more pronounced in Evans. So in Evans, the defendant was not being held pursuant to that order, but its collateral effects continued. Here, the defendant is being held pursuant to that order and the collateral effects are continuing. And so that's why the first order is the problem. So the first order is not what's currently effectuating his custody because the first order expired in our point to the district court at that point in great detail was you cannot extend this custody further pursuant to a new order. So the district court entered a new 42-41 order. He either had the authority or he didn't, the district judge. But insofar, again, as collateral effects, it seems to me you're not challenging the order that has collateral effects. We're not. We're not challenging the first order that initially subjected him to commitment because that order was not erroneous. Magistrate Judge Roby rightly found him incompetent and committed him to the attorney general's custody after four months. The government finally, I mean, late recognized that that order had expired and sought to extend it. And that's why the district court was required to enter a new 42-41 D2 order. That is the current order effectuating his intention. And that order is also the order that is creating the collateral effects, because our point in this case, and the government has ignored this in their brief, is there are there are many, first of all, concrete impacts to the challenge order on Mr. Berry's current legal status, as well as collateral consequences, as your honor and that that custody involves forcible medication. So that's a concrete effect of this order, as well as this custody itself. But not only that, let's back up a step after the first order, you're back in court. The district court is frustrated with the government and so you have a hearing and the doctor testifies, presumably with the notion that there's some chance that Mr. Berry might be restored to competency. The other witness doesn't say to the contrary, just says, if not, then perhaps civil commitment. So based on the testimony. And you don't challenge, I guess, his mental status, but in any event, the court says government either get him in the hospital at the end of this period or I'm going to so that day came and passed and nothing happened in the district court, as far as I could tell, following that. And so it doesn't look like the district court was provoked to do anything. But of course, as you say, the 11th hour at the end, apparently when the government saw it couldn't do what it said, it then goes to North Carolina and does the new proceedings and so forth. So I guess my question is, for a while, nothing was happening, but it looks like the district court, Judge Guidry, ordered you all to brief, you know, whether there's jurisdiction remaining in his court. And if not, why not? I mean, we checked yesterday, but what's the status of that? He hasn't ruled on the motion to dismiss the indictment, right? Right. Well, so what the district court was considering doing was there's not a motion to dismiss the indictment, to be clear. And I know it's difficult because a lot of the proceedings are under seal. There's no pending motion to dismiss the indictment. But the district court was determining was whether he could continue on with this forty one or forty two, forty one D process while the appeal was pending. The government urged the district court. Yes, go ahead. Go on. Go on with it. Our argument was this is the subject of this current appeal. The district court has not ruled on that. And so our point also is that there's no further steps to be had under forty two, forty one D, because that process terminated a long time ago. And that's been our argument consistently throughout was that once the in April of last year, the government lost its authority to detain Mr. Berry. It did not seek an extension. It had not restored him. And so at that point, the authority of the attorney general to hold Mr. Berry terminated. And so nothing the district court has done. And I don't think the district would have jurisdiction to do it has has mooted this appeal. And like I said, if the district court did something to move the appeal, it would be without without jurisdiction to do so. So nothing has happened below that would require that. What we're asking is for this court to vacate the forty two, forty one D to order, which is the order keeping him in jail and ordering his release from attorney general custody because the attorney general's authority to hold him has expired and asking Mr. Berry to be sent back to Marshall's custody in Louisiana and for further proceedings to happen there. But we haven't sought to dismiss the indictment except originally under our speedy trial act motion. But we haven't sought to dismiss the indictment. And we don't ask this court to dismiss the indictment. What we're asking for is for the unlawful custody, an attorney general, the unlawful custody with the attorney general to be terminated and for Mr. Berry to be returned to U.S. Marshall's custody where he should have been a long time ago. And it's because that ongoing custody is violating congressional and constitutional limits on the detention of incompetent defendants like Mr. Berry. The government didn't address this issue in any length and it's brief. But the entire crux of our argument to the district court below was that you cannot extend custody that expired long ago when the government didn't seek to extend it and the government didn't use any period of that four months to even attempt to assess or restore the person. And the person is not, in fact, restored because Congress passed IDRA in direct response to Jackson v. Indiana, which held that competency statutes like this one are unconstitutional if they permit periods of indefinite confinement for incompetent defendants. So Congress, through IDRA, prohibited exactly that. Congress carefully defined each stage of the competency process and set specific limits on how long each stage could last. And so the attorney general in this case was was trusted with Mr. Berry. He was committed to their custody in December of twenty twenty one. That custody expired, that commitment period expired in April and the government had done nothing. This is how carefully IDRA, whatever it is, sets out this, I don't see where it does carefully set out the preliminary period. It sets out the period once you start the process and have an order. What about that? It does seem to me you've got to start this with a motion to have the competency determined. I just don't see this gap as improper, as unfair or however else you want to call it, before they find space in some facility. They don't have enough facilities. I mean, your brief is compelling on the problems. But where is this statutory demand that says that the clock or I believe the clock, I don't measure days by clocks, that the calendar start? So, Your Honor, I think first textually, Congress says this in the same breath. So upon the finding that an individual is is found incompetent, the district court must commit. And that's in 4241D, the court shall commit the defendant to the custody of the attorney general. That means the commitment period has started at the moment that a defendant is determined incompetent. He is committed to the custody of the attorney general. In the next breath, the attorney general shall hospitalize the defendant for treatment in a suitable facility for a reasonable period of time, not to exceed four months. And I appreciate the one thing that I think is extremely important to me, and I'm sure the court believes in any way that's ambiguous, which I don't think it is. The point of this provision was to limit the commitment period, because that was the point of Jackson, was that anybody committed based solely on their incompetency, which is exactly what this effectuates, that commitment period must be limited by the statute. The statute must do so. And if the statute doesn't, it's unconstitutional, which is why Congress did an entire overhaul of IDRA. And this particular section was most important in that overhaul that Congress clearly intended to limit this commitment period. And there's no evidence whatsoever that there's some sort of secret step in between those periods that Congress left fully unregulated, that Congress, A, didn't know, which we know it can do because in the Speedy Trial Act, for example, it does pull out transportation. It doesn't here. So there's no evidence that Congress intended some secret gap period that would be fully unregulated in violation of Jackson. And in fact, to the contrary, that would completely frustrate congressional intent because the point of these amendments was to limit this commitment period in time. Now, I should say what I don't want my colleagues may want you to pursue this little further. You only have two minutes left. Do you want to address just the legitimacy of the order insofar as the fact finding and whatever else as far as the commitment? Sure. So I think that that's a tertiary issue at best because there are so many layers of error before the district court should have gotten to that point on all of those. So you might want to get. I understand your honor. So this, I think, represents just another failure of the government to fulfill this statute. The government in its motion did not even allege the correct legal standard. It alleged that Mr. Berry would be restored sometime in the future. That obviously violates the statute. The entire purpose of a D2 extension is that is strictly limited in an identifiable time, such period that is required to bring the defendant to competency. The government didn't allege that that had been met and its witness didn't testify that that had been met. And so the government says many cases that say, oh, a district court can defer to the findings of an expert, and that's true, but the district court can't defer to the findings of an expert that that didn't actually make that conclusion. Now, one thing that I want to note is that this court can actually avoid the statutory construction issue altogether because even under the government's construction of IDRA, it still blew through this deadline. The government has not actually argued to this court that it that it complied with IDRA because it didn't. Under no view of the statute, can the government prevail on this point? Because by mid-October of last year, Mr. Berry had been at Butner for four months. By that time, the government had not restored him and it hadn't filed a motion to extend his confinement. So this case is unique and it and it creates an easy path to reversal. I'm confident that our view of IDRA is right based on congressional intent in Jackson, but that I want to note that because of the nature of the government's violations in this particular case, this court doesn't even need to reach the statutory construction issue because under any construction of the statute, Mr. Berry's continued custody is unlawful. And the district court was without authority to allow his his custody any further. And I see my time is up. All right. Thank you, Mr. All right. Counsel for the government, you're up. Said you're up. Thank you. Yes, Your Honor. Good morning. May it please the court. Let me start off by saying, Your Honor, that as the prosecutor handling this case, I am disappointed that Mr. Berry had to wait months before being transported to Butner for his restoration proceedings. I don't condone the delay and I was frustrated by it. And I understand any concerns that this court may have over the delays. But the delay was not intentional. And ultimately, the defendant was brought to Butner for restoration. You said it's not intentional. It seems to me it's unavoidable if what Ms. Rhodes says in the brief is at all correct, that the government's not set up to handle this in a way that would keep you from having this concern. There aren't enough spaces for him and this kind of delay is is structural almost. What do you say to that? Well, Your Honor, in terms of the structural issue, I think the BOP has taken steps to address it. How are you? Hello. Somebody needs to be. Somebody needs to be muted. All right, maybe I'm sorry, OK, thank you. People were having a conversation. All right, press ahead. Yes, Your Honor, the BOP has taken steps to address this issue by opening new facilities. I've been advised and I have to go out of the record to say this, but there are new facilities that are open that will hopefully alleviate this problem in the future. Three facilities, FMC Devens, which was opened in March of 2021, FMC Lexington, which was opened in September of twenty twenty two, and MCC Chicago, which was opened in January twenty twenty three. So pivot back to kind of where we are. First off, so we get through this. I mean, you know, there are hierarchical and bureaucratical and other issues in terms of placement. But the facts are sort of what they what they are. Now, my reading of it, as I said, was that you were teed up in front of Judge Guidry pressing ahead, he's very dissatisfied with the government not getting Mr. Berrien, dot dot dot. I read the judge to say you have this hearing extends the order predicated on the government doing what it said it would do. But I read him to say, if you don't do this, I'm going to dismiss the indictment. Maybe I read the wrong thing. That day came and went. Nothing happened. It looks like at the eve of the expiration of the period, that's when you all went to North Carolina. Presumably, and I have a question about why the proceedings are filed in North Carolina as opposed to back here in Louisiana. But you argue first off, but all this is moot and so forth. So just address that first before you get into the things that Mr. Oaks mentioned. Yes, your honor. Well, the issue is moot for two reasons. As we said in a brief, first of all, there's no case in controversy before this court. The extension that issue, the second study order, first of all, was proper. But even if the court finds that it wasn't proper, it's over. So it's that time period, that second study period is over. And so there's no question. What do you say is the authority that this bill is now being held under? He's now being held. Yes, he's now being held under attorney general custody authority for the forty six twenty six civil commitment proceedings that have been initiated in North Carolina. So you would say that the order, the second order and the only one that has been appealed from. Has no continuing effect on on on this case, that that is correct, that is ended. OK, and as anything, I mean, you started proceedings in North Carolina, but there are states, so it seems to me that there's any. Can the attorney general just hold someone without a court order on the 40, whatever subsection it is that you're relying on? Forty two. Forty six. Well, they were stayed pending a judicial determination from the court. So there's no court order other than the one that's on appeal here. The latest one is the one that's on appeal here from any court. Correct. Right. But I think I think your honor, once they have the authority, he was found to be dangerous and they can proceed because he's incompetent and under the statute, the statute prescribes that the attorney general, if he's found incompetent and irrestorable, that they have the authority to to move forward with those with those civil commitment proceedings. Now, the last order entered, the last order entered was entered by Judge Guidry, the order that's being complained of, isn't that correct? That is correct. And as we asserted in our brief, that order is proper, was proper under the circumstances, was not abuse of discretion. The judge heard testimony from the psychiatrist that was observing him through the study period. He heard the testimony of of where she said that he was making progress. He's making progress from the from the time that she initially observed him to up to that point and where we had the hearing. And she felt that based on that progress and how he was doing in community settings and how he was responding, that it was justified to ask for an extension and that extension. So so the judge made a judgment call and he had and she said that he was going to there was a substantial likelihood that he would be restored based on the trajectory that she was seeing at the time. And that study order, I will also say, Your Honor, was limited in time. It wasn't open ended. If you recall, the judge gave a certain date by which it had to be completed. Well, counsel, I understand what you're saying. It seems to me that you still need to sell me something on the idea that there's something else other than the continuing effect of an order that should have expired, you say it did. After 120 days. But I don't see anything else replacing it. Now, that could mean that I'm just not seeing it. It could mean that there is no authority to be continuing to hold this fellow anywhere by any court order or some other explanation altogether. For this case to be moved, it needs to be clear that there's neither collateral effect, it seems to me, of the order that's on appeal. And Evans is not necessarily on point on that, but it's at least gets us there. Or excuse me, the principal argument and at least the brief by Ms. Rode is that the continuing effect is it's holding him in attorney general custody. You say, no, something else is. But I don't see the other thing that is holding because no other court order has been entered. It's attorney general doing it on his own. I think I think the statute allows him to proceed to hold him for the competency proceedings. Under forty to forty six, once he's deemed incompetent, the statute says that they shall commit to some part of forty to forty six. So you want to point us to. I don't have the statute from your honor, but from from what I recall, my last reading of the statute is that the attorney general shall shall shall hold him for purposes of of the of the civil commitment. Well, I see on the forty to forty six with attorney general can start proceedings to transfer this person to state custody and allow the person to be treated in state custody, I don't see in forty to forty six, but you've studied it more closely than I have. Where he can continue it is in federal custody after the two periods of time to determine if the person can be restored to competence, I believe it's in I believe it's in the second part of the statute. Well, OK, well, we'll look for it. That's your argument. We'll see if it stands statutorily. Well, it just looks like, you know, when the fuse was burning in Judge Guidry's court, you can't make all hopes of determining he's competent or gone, no matter what the expert thought. I mean, it just hadn't happened. You're running out the fuse is burning and you're faced with whatever consequences Guidry was going to do as a result of that. And so then just at the end of that period is when you went to North Carolina and then file these civil proceedings. To me, it looks it was done in recognition that. You know, there was no basis for the order in Louisiana anymore. You got to move, you got to have another strategy. And it seemed to be this civil commitment filing in North Carolina. And so that's up there. And as I see it, nothing has happened because the parties who filed motions or the judge said briefing, I think on it's held in abeyance until we do whatever we're doing down here is the way I understand it. So there's nothing happening in North Carolina pending us resolving this matter. So is it your argument that the civil proceedings in North Carolina has eclipsed or cleansed any violations that may have occurred in the proceedings here? Not that he's under this civil commitment set of pleadings, that's all that matters. Yes, your honor. It is it's a government's position that that is in another district. And under that part of the statute that I referred the court to, he can be committed under that part of the statute and they can proceed accordingly from there. What's the best case you have for that authority in the circumstance where there has been an order such as here, you know, holding someone and then you come in with the civil proceeding, what's the best case that you had to kind of fix this scenario? We have. I'm thinking it's up. See. Right, sealed, a pally versus sealed repellent, and that's a Fifth Circuit case where an extension had been filed after the forty to forty one study period had expired and a dangerous certificate. It does not be it does not need to be the dangerous certificate under forty to forty six does not need to be filed during the fourteen forty to forty one D commitment time period. And it's also the statute does not require that the forty to forty six papers need to be filed during that one hundred twenty day commitment period either. Counselor, looking at forty to forty six, I don't know if you just do it. It's about the right. Thank you, sir. The reason I guess I'm hung up on forty to forty six, each of the divisions in there that I've seen talks about. If the person is not going to restore confidence and the charges against them have been dismissed, then there are some proceedings that are to occur, my understanding from the exchange, Miss Rhodes had with our presiding judge of the indictment still there. The charges have not been dismissed. But if that's what you're relying on, there are a couple of places, at least in forty to forty six. Well, that's the predicate. Have you started proceedings in North Carolina without dismissing the indictment and therefore we're not quite in the right place for that to be relevant? No, your honor. They can proceed whether the whether the charges are whether or not the charges are dismissed once he's found incompetent, they can proceed. The charges don't the charges don't need to be dismissed to trigger the forty to forty six process. Well, OK, we'll see. Keep going. So you want to have both the indictment hanging over his head in Louisiana and have the civil proceedings going in North Carolina? Simultaneously, basic. Well, I mean. Right now, it's a legitimate indictment, I mean, there's it's it's a valid indictment, doesn't you know, unless unless the district court dismisses it, it's still it's still open. Well, it's not that it's an indictment, it's maybe an improperly begun, prematurely begun proceedings in North Carolina, as you. I've been working with how to deal with these deadlines. The deadlines are down between days, ending what to do with them, going to North Carolina, start civil proceedings, you haven't dismissed the indictment yet, it seems to me these things are not being done yet, you know, selling that being done consistently with forty two, forty one or forty two, forty six. Your Honor, again, the dismissal that the indictment doesn't need to be dismissed to trigger the or to allow the forty two, forty six proceedings to to go forward. What's the nature of the matter now that Judge Guidry asked for for briefings on so is Judge Guidry aware of the pleadings that, you know, the civil commitment procedure is going on in North Carolina. So I guess my question is, rather than being up here in front of us, you know, should we remand this back down to Judge Guidry to sort of unscramble the egg in light of everything that has transpired since the expiration of the period that the defendant was being held? I don't think that's necessary, Your Honor. I mean, the whole the the whole. The second commitment order that he made was proper, so. So so that so that issue is moot. I mean, I don't see necessities to send it back down. Well, I'm trying to get I'm trying to get it. You got a lot of things. You've got an appeal up here with us. You have a civil commitment going in North Carolina. And you still have a matter in front of Judge Guidry. I checked the record last week and he asked you all to file in his court. I mean, there are three different venues dealing with the same defendant. And I'm trying to figure out what is it that remains in front of Judge Guidry. What is it you're saying to him? Given that he's the last judge who entered in order about this defendant. So, Judge, what I was trying to say earlier and to your point is you can affirm on this record. But if there are any questions that are that are out there that are still open, it can be, you know, it can it can be remanded for and to allow Judge Guidry to address whatever open items that that he needs to address. Well, I'm just trying to understand and not to belabor the point, you know, there's this notion about, you know, well, we're in belt and suspenders, you know, as a way it looks like you're trying three different approaches and still a live proceeding in the district court in the Eastern District of Louisiana, a civil commitment in North Carolina and an appeal up here with us over the efficacy of the order. And so this Rhodes point, even assuming. That the initial order was bona fide, which nobody says it is. But even if the the second order was bona fide, that was all towards the idea of restoring him to competence. It seems nobody's disputing now that he's not competent. They're right. That's correct. So the flavor of what was going on in the hearing was, you know, this idea he may become competent, so that's out the door. So we now have this situation where he's deemed incompetent, which seems to trigger the statute. So why isn't. The civil proceeding. To occur here in Louisiana, where he was and where the charges occurred, as opposed to up in Butte. So the way the process works, in my understanding of forty to forty six is the preference of the statute is to civilly commit him in the state, in the home state, if that state won't accept them, then North Carolina can proceed and they must proceed with a civil commitment in that district. OK, so as soon we say that this is not in, where are you? Back to back to where we're to our prior argument, your honor, that the forty to forty one, the second extension was proper. As I said earlier, the court heard the testimony of the of the psychiatrist who observed him through the first study order, heard the testimony and she said he was making progress such that she felt that a extension that he could benefit from the extension and that he could be restored within that time period. So that second order was fine. And again, it was a limited order. It wasn't an open ended order. The judge put a time limit on it and he didn't he didn't make it. He didn't make it within that time. And the requirement of the requirement of the government having to state on what day he would become competent is just it's just it's just not viable, but he did limit it. So that's where we are. It was a proper order. The second extension. The second extension, he wasn't made competent within that time and 46, 42, 46 applies at this point. If we agree with you, what happens in the two proceedings that would still be pending, North Carolina and Judge Guidry? Well, at this point, North Carolina can proceed, can continue to proceed, whether whether the indictment stands or falls or whether or he's found incompetent. That has no effect on what they do up there. Well, they're waiting for something. Aren't they waiting for a ruling from over here? Well, right, because we were in the process, as as Judge Stewart said, we were in the process of briefing the district court when they asked us, what are the options at this juncture considering the intellectual appeal? Got to wrap up for us. Yes, your honor. Thank you. So based on the arguments that we presented today and the brief, we'd ask that this court affirm the lower court's decision of extending the second study order or dismiss the appeal and allow the 20, 42, 26 proceedings to move forward in North Carolina. Thank you, your honor. All right. Thank you, sir. All right. Miss Rhodes, you have rebuttal. Thank you, your honor. There's a couple of corrections I need to make about 42, 46 because the government is incorrect about how that statute is applied. First, Judge Southwick, you're right. And the North Carolina prosecutors recognize this. North Carolina cannot proceed because Mr. Berry has not been found irrestorable and the 42, 41 D process has not been complete. That is a necessary prerequisite for proceeding with civil commitment in North Carolina. But more importantly, there is absolutely not independent authority to hold somebody in custody based solely on the fact that the government has initiated civil permit commitment proceedings. That commitment must be based on a lawful order, and if you look at the text of 42, 46, that is clear. This can only be done for a person who is hospitalized, who is committed to the Bureau of Prisons, the person who is already committed to the Bureau of Prisons, whose sentence is about to expire. So if there's an underlying judgment, that is the reason that they are committed to the Bureau of Prisons. Civil commitment can be initiated or who has been committed to the custody of the attorney general pursuant to Section 41, 42 D. So that means that the person has to lawfully be in the custody of the attorney general for them to initiate civil commitment proceedings. The mere fact that they initiate civil commitment proceedings is not the order holding them in custody. That's not an order. That's not a judicial commitment. The judicial commitment ordering him in custody right now is the 42, 41 D order that we are challenging in this appeal and that needs to be vacated in this appeal. And Judge Stewart, to your point, we would urge this court not to remand this case. The question raised in this appeal is whether the 42, 41 D order that has already been entered by the district court and is continuing to effectuate Mr. Berry's unlawful commitment was entered in error and whether Mr. Berry currently is held in the custody of the attorney general unlawfully. The proceedings that the district court is potentially anticipating are predicated on the assumption that Mr. Berry is lawfully held in custody. It's predicated on the idea that the district court already found. And if this court leaves undisturbed, will remain intact that Mr. Berry could continue to be committed in custody and can continue to be committed in custody by the attorney general. The dismissal reference that the judge was making was not dismissal based on the government's unlawful conduct that we raised, it's based on our speedy trial motion that we filed almost a year ago now that the district court still has not ruled on. So the district court is not indicating that it's that it's considering re adjudicating the question of whether Mr. Berry is lawfully in attorney general custody. The district court already decided that issue when it issued this order. Our entire the backbone of our opposition to that order was that this already had expired, which we think is very clear under the statute, under our interpretation and under the government's interpretation, and that the district court therefore could not enter an order continuing his custody. And as I said, that was agreed with that. Those preliminaries and say that the second order for 120 days was properly entered, but it has expired. Let's say we go that far with the government. Where does that leave you? What argument would you want to present to us then? Absolutely. So I would say that that Mr. Berry is currently then being held in custody on lawful unlawfully, because that would mean that there is no active judicial order allowing the attorney general to hold him in custody. And what we would ask is that this court make that clear and order that Mr. Berry be transported back to the U.S. marshals. The U.S. marshals do have authority to hold Mr. Berry in custody, and he should be. But the discreet issue that's before us, I mean, the only issue is the legitimacy of that extension, that order. We don't have the whole case up here as far as all these other matters. They're not in front of us. I mean, there's still an open file in front of Judge Guidry. He just ordered y'all to file more. The only issue that I see, if we say it's collateral order that's discreetly before us, is the question of the authority to do the extension. It's now over. As Judge Southwick said, assume we say that was all geared towards seeing if the guy could be restored, nothing prohibited, no abuse of discretion. If that's the only question we answer, then what would be the basis for us getting to any of the rest of this when you still have a pending case open in front of Judge Guidry? Nothing he did was based on this now known fact that Mr. Berry is incompetent. All his orders was entered in the notion that the guy could be restored to competency. So everything has changed with respect to that. That's why I keep coming back to, I know you don't want to remand, but it's very questionable that we have authority beyond the narrow question that the appeal was on. I know your time has run out, but you're good. Give her two more minutes, because the whole point of the oral argument is to get answers to our questions. Give her two more minutes. You understand what I'm asking? I'm saying the extent to which the other side says it's smooth. Suppose we say it's not. But it's legitimately here on a collateral order, because there's no judgment entered by Judge Guidry. It's not. The last thing he said is, you know, he's held 120 days extended. Everybody agrees that's expired. That's all that's there. The case is still open below. There's been no appeal of any other orders, none of the North Carolina stuff. How do we have any of that in front of us other than your narrow issue about the order? You understand what I'm asking? I do, Your Honor, and I think in my conversation with Judge Southwick just now, what we're saying is this order that is challenged on appeal is effectuating his current custody with the attorney general. That order is being challenged in this appeal as unlawful. And so it is well within the scope of this appeal. In fact, it is the central question of this appeal of whether Mr. Southwick is being held in the custody of the attorney general lawfully, because that order that we are challenging is the only document effectuating his ongoing custody. So absolutely. I mean, that either because it's expired or if we otherwise said it was properly issued, everybody agrees it's expired. Right. It's over. Well, I don't think the government I think that the government appears to think that it can still hold him pursuant to an expired order. Oh, I know it does. I know it does. I'm just saying I'm getting to even if we answered the question that the district court properly granted the extension, that's all we said, because that's all that's here. Then that just means a period of time, which everybody agrees is now over, was legitimately entered. That would in no way answer a question about the legitimacy of Mr. Berry's current status being held. I'm sure your honor, it's the defect, it's the defects in the district court's order and the government's conduct in this case, which was clearly unlawful under Idra. That is what renders his current custody unlawful. Well, that's just the reason why I asked that if we answer the only question put to us. And assuming it's adverse you by saying the district court lawfully extended the order for 120 days, you know, no abuse of discretion, period, end of sentence, then you still have your argument that he's being held. Unlawfully, as all the arguments that you've made before, my question is just whether those arguments shouldn't be made in the first instance to the judge who issued the only order that's in the case. You understand that? Why should that argument be made to Judge Guidry? OK, your honor, the Fifth Circuit has said that the extension was bonafide, but it's over. The government has no legal basis to hold my client and he rules in the first instance on those concerns and issues. That's that's what I'm asking. Sure. Sure, your honor. And I think that it's well within this court's power to at the very least, if this court does do that, order that Mr. Berry be transported back to U.S. Marshals custody. Because even if this order is valid, how would we how would we have the plenary authority to do all of that? That's what you want. But we're a court of limited jurisdiction, and the narrow question put here is about this period. I know you're here, but I keep harping on everything else that's in this case is in a district court, either in the Eastern District of Louisiana or in North Carolina, none of that is up here before. So what would be the plenary authority for us to reach issues that no district court has ruled on in the first place? Yes, sir. I think Judge Guidry has made his opinion on Mr. Berry's custody clear. The issues that we presented before this court have been ruled on. Judge Guidry rejected them. We've requested this court review the attorney general's authority to hold Mr. Berry, which is pursuant to this order. I think it is well within the scope of this appeal for the court to determine that he is not lawfully within the custody of the attorney general. And we would urge the court to reach those questions now as this is an expedited appeal. And also because they're lawfully before this court. All right, we appreciate both of you addressing these matters in the briefs and in the oral argument. We do understand it is an expedited matter and we'll do our very best to render our ruling post haste. All right, Judge Southwick, Judge Dennis, any additional questions for either one of the counsel while we have them? None for me, sir. Thank you. All right. Thank you. All right. Well, that concludes this virtual oral argument. Thanks to counsel and we'll take it up quickly. Thank you. All right. With that, the panel stands adjourned.